IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DUKE'S INVESTMENTS LLC,<br><br>    Plaintiff,<br><br>  vs.<br><br>ELIZABETH A. CHAR, M.D., IN HER OFFICIAL CAPACITY AS THE DIRECTOR OF HEALTH OF THE HAWAII STATE DEPARTMENT OF HEALTH; AND HAWAII STATE DEPARTMENT OF HEALTH,<br><br>    Defendants. | CIVIL NO. 22-00385 JAO-RT<br><br>ORDER (1) GRANTING DEFENDANTS ELIZABETH A. CHAR, M.D. AND STATE OF HAWAI'I DEPARTMENT OF HEALTH'S MOTION TO DISMISS PLAINTIFF'S VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF WITH REQUEST FOR A TEMPORARY RESTRAINING ORDER, AND (2) DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION |

**ORDER (1) GRANTING DEFENDANTS ELIZABETH A. CHAR, M.D. AND STATE OF HAWAI'I DEPARTMENT OF HEALTH'S MOTION TO DISMISS PLAINTIFF'S VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF WITH REQUEST FOR A TEMPORARY RESTRAINING ORDER, AND (2) DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff Duke's Investments, LLC ("Plaintiff"), a company specializing in the sale of hemp and hemp products, sued the State of Hawai'i Department of Health ("DOH") and Dr. Elizabeth Char ("Defendant Char") in her official capacity as the director of DOH (collectively, "Defendants"). Plaintiff challenges certain 2022 amendments to chapter 11-37 of the Hawaii Administrative Rules ("HAR 11-37") governing hemp processing and hemp products. Plaintiff later moved for a preliminary injunction, which was followed by Defendants' Motion to

Dismiss.  ECF Nos. 13, 17.  For the reasons below, the Court GRANTS the Motion

to Dismiss and DENIES the Motion for Preliminary Injunction ("PI Motion").

## I.      BACKGROUND

### A.      The 2018 Farm Act

A basic comprehension of the United States' drug enforcement regime is

helpful to understand the context of this case.  The Controlled Substances Act

("CSA") established five controlled substance schedules.  *See* 21 U.S.C. § 812.

"Controlled substances are placed on a particular schedule based on their potential

for abuse, their accepted medical use in treatment, and the physical and

psychological consequences of abuse of the substance." *Raich v. Gonzales*, 500

F.3d 850, 854 (9th Cir. 2007) (citing 21 U.S.C. § 812(b)).  "Marihuana" is a

Schedule I controlled substance.[1]  21 U.S.C. § 812(c), Sched. I(c)(10).

Marijuana and hemp are different varieties of the Cannabis sativa L plant.

ECF No. 1 at ¶ 12.  Delta-9-tetrahydrocannabinol ("Delta-9-THC") is one of many

isomeric forms of tetrahydrocannabinols ("THC") and is the primary cannabinoid

isomer that causes a psychoactive reaction in humans when consumed at certain

concentrations and levels.  *Id*. at ¶ 11–12.  Delta-9-THC "can exist in hemp, but

---

[1]  "[T]he terms 'marihuana' and 'marijuana' mean all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin."  21 U.S.C.A. § 802(16)(A).

only in a concentration of less than .3% of [D]elta-9 by dry weight." *Id*. at ¶ 15. Delta-8-THC and Delta-10-THC are uncontrolled "natural derivatives of hemp." *Id*. at ¶ 17.

In 2018, the Farm Act, Pub. L. No. 115-334, 132 Stat. 4490 ("2018 Farm Act"), was enacted, which "legalized the possession and cultivation of hemp." *AK Futures LLC v. Boyd St. Distro, LLC*, 35 F.4th 682, 686 (9th Cir. 2022) (citation omitted). The 2018 Farm Act amended the definitions in the CSA to exclude (1) hemp from the definition of "marihuana" and "marijuana" and (2) the type of THC found in hemp from the definition of THC. Pub. L. 115-334, 132 Stat. 4490 § 12619 (Dec. 20, 2018); 21 U.S.C. § 802(16)(B)(i); § 812 Schedule 1, (c)(17). The 2018 Farm Act defines hemp as the "plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 1639o(1). The State of Hawaiʻi ("the State") officially adopted the 2018 Farm Act's definition of hemp when it enacted HAR 11-37 on August 9, 2021. *See* DOH, Chapter 11-37 (Interim Rules), HAR, available at https://health.hawaii.gov/food-drug/files/2021/08/HAR-11-37-official.pdf.

On February 1, 2022, DOH amended Rule 11-37 ("February Amendment"). *See* DOH, Chapter 11-37 (Interim Rules), HAR, available at

3

https://health.hawaii.gov/food-drug/files/2022/02/chapter-11-37-HAR-interim-rules-effective-February-24-2022.pdf [hereinafter DOH February Amendment]. Significantly, the February Amendment differs from the 2018 Farm Act in that it prohibits "the sale or distribution of hemp" with Delta-8-THC or Delta-10-THC, in addition to hemp containing Delta-9-THC concentrations exceeding 0.3 percent. *See* ECF No. 1 at 8 ¶ 24; DOH February Amendment.

DOH again amended the interim rules on April 1, 2022 ("April Amendment"). *See* DOH, Chapter 11-37 (Interim Rules), HAR, available at https://health.hawaii.gov/food-drug/files/2022/09/chapter-11-37-HAR-interim-rules-cover-sheet-effective-April-29-2022-1.pdf. The April Amendment changed the definition of "total THC" and the requirements for laboratory analysis of hemp products. ECF No. 1 at 9 ¶ 26.

**B.    Alleged Facts**

After the State initially adopted the 2018 Farm Act's definition of "hemp" on August 9, 2021, Plaintiff opened eight retail locations in Honolulu dedicated to the sale of legal hemp and THC products derived from hemp. *Id*. at 8 ¶ 23. Plaintiff alleges that after DOH "quietly" passed the February Amendment, *id*. at 8 ¶ 24, and the April Amendment, *id.* at 9 ¶ 26, (collectively, "amendments"), the Honolulu Police Department and DOH raided Plaintiff's retail locations and arrested two of its employees. *Id*. at 11 ¶ 31. Plaintiff also alleges that DOH

"embargoed" all of Plaintiff's inventory (worth approximately $200,000),

including products "undeniably legal under HAR-11-37."  *Id.* ¶ 32.

## C.    Procedural History

Plaintiff filed its complaint on August 22, 2022 ("Complaint"), bringing

seven claims against both Defendant Char in her official capacity and DOH.  ECF

No. 1.  Plaintiff alleges the following counts:

First Cause of Action: Violation H.R.S. § 91-7.  In this claim, Plaintiff seeks

a declaration that the February and April Amendments were enacted in violation of

H.R.S. § 91-3(a), and so are invalid, *id*. at ¶ 46, and a preliminary injunction

prohibiting Defendants from enforcing the amendments without first complying

with H.R.S. § 91-3(a), *id*. at 14 ¶ 47.

Second Cause of Action: Procedural Due Process, 42 U.S.C. § 1983.  In this

claim, Plaintiff seeks a declaration that the amendments violate the procedural

component of the Due Process Clause, and injunctive relief prohibiting Defendants

from enforcing the amendments.  *Id*. at 17-18 ¶¶ 66–67.

Third Cause of Action: Substantive Due Process, 42 U.S.C. § 1983.  In this

claim, Plaintiff seeks a declaration that the amendments violate the substantive

component of the Due Process Clause, and injunctive relief prohibiting Defendants

from enforcing the amendments.  *Id*. at 21 ¶¶ 82–83.

Fourth Cause of Action: Equal Protection, 42 U.S.C. § 1983.  In this claim, Plaintiff seeks a declaration that the amendments violate the Equal Protection Clause, and injunctive relief prohibiting Defendants from enforcing the amendments.  *Id*. at 22 ¶¶ 92–93.

Fifth Cause of Action: Federal Preemption.  In this claim, Plaintiff seeks a declaration that (1) portions of the amendments are preempted by federal law, (2) the federal definition of hemp should serve as the definition of hemp under Hawaiʻi law, and (3) the State's prohibitions of Delta-8-THC and Delta-10-THC are illegal alterations of the federal definition of hemp and are therefore void under federal law.  *Id*. at 25 ¶ 109.

Sixth Cause of Action: Fifth Amendment Takings.  In this claim, Plaintiff alleges that the amendments deprived Plaintiff of all economically beneficial use of its businesses and leases without just compensation.  Plaintiff thus seeks "just compensation in the form of lost income from the use of its property."  *Id* at 26 ¶¶ 112, 114.

Seventh Cause of Action:  Motion for Temporary Restraining Order ("TRO Motion").  *Id*. at 29 ¶ 128.

On November 22, 2022, District Judge Kobayashi denied Plaintiff's TRO Motion ("TRO Order").  *See* ECF No. 23; *Duke's Invs. LLC v. Char*, No. CV 22-00385 LEK-RT, 2022 WL 17128976 (D. Haw. Nov. 22, 2022).  Before the TRO

Order was issued, however, Plaintiff filed the PI Motion on September 22, 2022.
*See* ECF No. 13.  Judge Kobayashi subsequently issued a Minute Order on
December 1, 2022 ("Minute Order"), finding that the PI Motion made the same
arguments as the TRO Motion.  ECF No. 23.  Judge Kobayashi thus denied the PI
Motion, but provided that a written order would be issued superseding the Minute
Order.  *Id.*

On December 21, 2022, Judge Kobayashi issued an order recusing herself
from the case.  ECF No. 28.  After the case was reassigned, the Court directed the
parties to file briefs addressing whether the Minute Order "constitutes a final order
denying Plaintiff's Motion for Preliminary Injunction."  ECF No. 33.  Both parties
timely filed their briefs, agreeing that the Minute Order was not a final order.  ECF
No. 36–37.  Defendants filed an opposition to the PI Motion on January 27, 2023.
*See* ECF No. 39.  Plaintiff did not file a reply.

Defendants filed the Motion to Dismiss on October 18, 2022, which Plaintiff
filed an opposition to on December 16, 2022.  *See* ECF Nos. 17, 27.  Defendants
filed their reply on December 23, 2022.  ECF No. 31.  The Court held a hearing on
both the PI Motion and the Motion to Dismiss on March 10, 2023.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure ("FRCP") 12(b)(6) authorizes dismissal of a
complaint that fails "to state a claim upon which relief can be granted."  Fed. R.

Civ. P. 12(b)(6).  On a Rule 12(b)(6) motion to dismiss, "the court accepts the facts alleged in the complaint as true," and "[d]ismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged." *UMG Recordings, Inc. v. Shelter Cap. Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)) (alteration in original).  However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000) (citation omitted).

Furthermore, the court need not accept as true allegations that contradict matters properly subject to judicial notice.  *See Sprewell*, 266 F.3d at 988.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

The tenet that the court must accept as true all of the allegations contained in the complaint does not apply to legal conclusions.  *See id.*  As such, "[t]hreadbare

8

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)) (some alterations in original).

If dismissal is ordered, the plaintiff should be granted leave to amend unless it is clear that the claims could not be saved by amendment. *See Swartz v. KPMG LLP*, 476 F.3d 756, 760 (9th Cir. 2007) (citation omitted).

## III.   DISCUSSION

Under the Eleventh Amendment, a state may be sued in federal court only under limited circumstances — consent, Congressional abrogation, and constitutional waiver. Absent these limited circumstances, a state is immune from suit in federal court. The Eleventh Amendment similarly shields state officials sued in their official capacity in federal court; however, the law recognizes certain exceptions to the Eleventh Amendment bar. For the reasons discussed below, the Court concludes that: (1) none of the limited circumstances permitting suit against a state in federal court apply in this case; and (2) none of the exceptions permitting suit against a state official in federal court apply in this case.

A.     **The Eleventh Amendment Bars All Claims Against DOH**

"The Eleventh Amendment shields unconsenting states from suits in federal court." *K.W. ex rel. D.W. v. Armstrong*, 789 F.3d 962, 974 (9th Cir. 2015) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996)); *see also* U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."). An unconsenting state is thus "immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (quoting *Mo. Emps. of Dep't of Pub. Health & Welfare v. Mo. Dep't of Pub. Health & Welfare* 411 U.S. 279, 280 (1973)). Eleventh Amendment immunity "applies regardless of the nature of relief sought and extends to state instrumentalities and agencies." *Krainski v. Nev. ex rel. Bd. of Regents of the Nev. Sys. of Higher Educ.*, 616 F.3d 963, 967 (9th Cir. 2010) (citing *Papasan v. Allain*, 478 U.S. 265, 276 (1986)).

The Supreme Court has, however, recognized limited circumstances in which a state or its agencies may be sued. First, a state may consent to suit, although such consent must be "unequivocally expressed." *PennEast Pipeline Co. v. New Jersey*, 141 S. Ct. 2244, 2258 (2021) (quoting *Sossamon v. Texas*, 563 U.S. 277, 284 (2011) (internal quotation marks omitted)); *see Port Auth. Trans-Hudson*

*Corp. v. Feeney*, 495 U.S. 299, 307 (1990) (concluding that specific provisions in New York and New Jersey statutes evinced that both states had expressly consented to suit). Second, Congress may "abrogate state sovereign immunity under the Fourteenth Amendment, again assuming it does so with the requisite clarity." *PennEast Pipeline Co.*, 141 S. Ct. at 2258 (internal citations omitted). Third, a state may be sued if it has agreed to suit in the "'plan of the Convention,' which is shorthand for 'the structure of the original Constitution itself.'" *Id.* (quoting *Alden v. Maine*, 527 U.S. 706, 728 (1999)).

First, all of Plaintiff's arguments related to immunity in its opposition discuss why Defendant Char does not enjoy immunity, not DOH. Plaintiff fails to cite any authority indicating that DOH has consented to suit in federal court. HRS § 91-7, which Plaintiff cites in its first cause of action, *see* ECF No. 1 at 13, authorizes a party to bring an action in its own courts, namely "the circuit court of the county in which the petitioner resides." HRS § 91-7. A state's consent to suit in its own courts, however, "is not a waiver of its immunity from suit in federal court." *Sossamon*, 563 U.S. at 285 (citing *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999)). The Court concludes that the State (and, as such, DOH) has not unequivocally consented to suit in federal court under HRS § 91-7.

Second, the only claims in this case implicating possible Congressional abrogation of state sovereign immunity are Plaintiff's four § 1983 claims. Section 1983 was enacted pursuant to § 5 of the Fourteenth Amendment, *Hutto v. Finney*, 437 U.S. 678, 702 (1978), and submits to suit "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia," deprives a party of "any rights, privileges, or immunities secured by the Constitution and laws," 42 U.S.C. § 1983. A state, however, "is not a 'person' within the meaning of § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989). "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Id.* at 66. "The Eleventh Amendment bars such suits unless the State has waived its immunity, or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity." *Id.* (internal citation omitted)

Nothing suggests the State has waived its immunity as to Plaintiff's § 1983 claims. *See e.g., Coll. Sav. Bank,* 527 U.S. at 675–76 ("Generally, we will find a waiver either if the State voluntarily invokes our jurisdiction, *Gunter v. Atlantic Coast Line R. Co.*, 200 U.S. 273, 284 (1906), or else if the State makes a 'clear declaration' that it intends to submit itself to our jurisdiction, *Great Northern Life Ins. Co. v. Read*, 322 U.S. 47, 54 (1944)." (other citation omitted)). Likewise, the

Supreme Court has held that Congress, in passing § 1983, did not intend to "disregard the well-established immunity of a State from being sued without its consent." *Will*, 491 U.S. at 67 (footnote omitted); *see also id*. at 71 ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."). The Court concludes DOH is immune from Plaintiff's § 1983 claims.

Finally, as explained above, a state may be sued if it has agreed to suit in the "plan of the Convention," which is shorthand for "the structure of the original Constitution itself." *PennEast Pipeline Co*., 141 S. Ct. at 2258 (quoting *Alden*, 527 U.S. at 728). The "plan of the Convention" includes "certain waivers of sovereign immunity to which all States implicitly consented at the founding." *Id*. (citation omitted). So, states may be sued if "the structure of the original Constitution itself" reflects a waiver of states' immunity. *Torres v. Tex. Dep't of Pub. Safety*, 142 S. Ct. 2455, 2458 (2022) (quoting *Alden*, 527 U.S. at 728).

The Supreme Court has recognized such waivers reflected in the Constitution in the context of bankruptcy proceedings, suits by other states, and suits by the Federal Government. *PennEast Pipeline Co*., 141 S. Ct. at 2258 (citing *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 379 (2006) (holding that Article I's Bankruptcy Clause enables Congress to subject nonconsenting States to bankruptcy proceedings to recover a preferential transfer); *South Dakota v. North Carolina*, 192 U.S. 286, 318 (1904) (finding structural waiver in the Constitution

as to suits between states); *United States v. Texas*, 143 U.S. 621, 646 (1892) (finding structural waiver in the Constitution as to suits by the Federal Government against a state).

No such implicit waivers can be found in the two clauses of the Constitution that form the bases of two of Plaintiff's claims here — the Supremacy Clause and the Takings Clause. And Ninth Circuit jurisprudence dictates that neither of these clauses alters the conventional application of the Eleventh Amendment. *See Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1397 (9th Cir. 1992) (holding that the "supremacy clause mandates that federal courts have the power to enjoin state officials for violations of federal statutes," but "the Eleventh Amendment bars an action alleging a violation of federal law if brought directly against a state or one of its agencies") (citing *Almond Hill Sch. v. United States Dep't of Agric.*, 768 F.2d 1030, 1034–1035 (9th Cir. 1985)); *Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948, 954 (9th Cir. 2008) ("[W]e conclude that the constitutionally grounded self-executing nature of the Takings Clause does not alter the conventional application of the Eleventh Amendment."). Therefore, the Eleventh Amendment bars these claims against DOH.

Because none of the limited circumstances in which a state may be sued applies in this case, the State, including DOH, is immune from all of Plaintiff's claims. No amendment could save Plaintiff's claims against DOH, and so the

14

Court DISMISSES the claims against DOH WITH PREJUDICE. *See Doe v. Regents of the Univ. of Cal.*, 891 F.3d 1147, 1153–54 (9th Cir. 2018) (dismissal should be with prejudice when the Eleventh Amendment bars a claim).

**B.     The Eleventh Amendment Bars All Claims Against Defendant Char**

The Eleventh Amendment similarly bars all claims against Defendant Char. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will*, 491 U.S. at 71 (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). "As such, it is no different from a suit against the State itself." *Id*. (citations omitted). Thus, the "general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." *Pennhurst*, 465 U.S. at 101 (quoting *Hawaii v. Gordon*, 373 U.S. 57, 58 (1963) (per curiam)).

Under the *Ex parte Young* exception to Eleventh Amendment immunity, however, "private individuals may sue state officials in federal court for prospective relief from ongoing violations of federal law, as opposed to money damages, without running afoul of the doctrine of sovereign immunity." *Koala v. Khosla*, 931 F.3d 887, 895 (9th Cir. 2019) (citing *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254–55 (2011)); *see also Ex parte Young*, 209 U.S. 123 (1908). *Ex parte Young* is based on the proposition "that when a federal court commands a state official to do nothing more than refrain from violating federal

law, he is not the State for sovereign-immunity purposes." *Va. Office for Prot. & Advocacy*, 563 U.S. at 255 (citation omitted).

In determining whether the *Ex parte Young* doctrine avoids an Eleventh Amendment bar to suit, a court conducts a "straightforward inquiry" into whether the complaint (1) alleges an ongoing violation of federal law, and (2) seeks relief properly characterized as prospective. *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., joined by Scalia and Thomas, JJ., concurring in part and concurring in judgment); 521 U.S. at 298–299 (Souter, J., joined by Stevens, Ginsburg, and Breyer, JJ., dissenting)).  The Court is also mindful that the "inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim." *Verizon*, 535 U.S. at 646 (citation omitted).  In discerning whether a claim is permitted or prohibited under *Ex parte Young*, the Court looks to the "substance rather than to the form of the relief sought, *see, e.g., Edelman*, 415 U.S. at 668, and will be guided by the policies underlying the decision in *Ex parte Young*." *Papasan*, 478 U.S. at 279.

### 1. Plaintiff's State Claim (First Cause of Action)

Plaintiff alleges that the amendments to HAR 11-37 are invalid because the process in which they were passed failed to comply with the notice requirements of HRS § 91-3(a), "which required that [DOH] give the Plaintiff (and the public) no

16

less than thirty days' advance notice of the proposed rule amendment, and allow such persons an opportunity to submit data, views, or arguments, orally or in writing."  ECF No. 1 at 9 ¶ 29; *id*. at 14 ¶ 40.  Plaintiff seeks a declaration that the amendments were enacted in violation of HRS § 91-3(a) and are therefore invalid, and an injunction prohibiting Defendants from enforcing the amendments without first complying with § 91-3.  *Id*. at 14 ¶¶ 46–47.

Plaintiff's claim is plainly based on an alleged violation of state law (HRS § 91-3), not an ongoing violation of federal law.  *Ex parte Young* is inapplicable in a suit against state officials on the basis of state law because a "federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law."  *Pennhurst*, 465 U.S. at 106.  The Supreme Court has explicitly held that "a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment."  *Id.* at 121.  Indeed, "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law."  *Id*. at 106.  "Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment."  *Id*.

Because *Ex parte Young* is inapplicable to this claim, the Eleventh Amendment bars this claim against Defendant Char.  No amendment could save

this state law-based claim against Defendant Char.  The Court thus DISMISSES

Plaintiff's First Cause of Action against Defendant Char WITH PREJUDICE.

### 2.   Plaintiff's § 1983 Due Process Claims

Plaintiff likewise fails to allege an ongoing violation of federal law in its

§ 1983 due process claims.  *Ex parte Young* therefore does not apply to Plaintiff's

due process claims and so the Eleventh Amendment bars these claims.  Even if it

did apply, however, Plaintiff does not allege any constitutional violations.

### a.   Plaintiff's § 1983 Procedural Due Process Claim (Second Cause of Action)

"The Due Process Clause 'forbids the governmental deprivation of

substantive rights without constitutionally adequate procedure.'"  *Armstrong v.

Reynolds*, 22 F.4th 1058, 1066 (9th Cir. 2022) (quoting *Shanks v. Dressel*, 540

F.3d 1082, 1090–91 (9th Cir. 2008)).  "Procedural due process imposes constraints

on governmental decisions which deprive individuals of 'liberty' or 'property'

interests within the meaning of the Due Process Clause of the Fifth or Fourteenth

Amendment."  *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).

The first problem with Plaintiff's procedural due process claim is that

Plaintiff alleges a *past* violation of *state* law, not an ongoing federal violation.

Throughout the Complaint, Plaintiff conspicuously takes issue with Defendants'

alleged violation of HRS § 91-3 in passing the amendments to HAR 11-37:

29.   The Hawaii Department of Health effectuated the February and April Amendments, in violation of Hawaii Revised Statutes Section 91-3(a) which required that the Department give the Plaintiff (and the public) no less than thirty days' advance notice of the proposed rule amendment, and allow such persons an opportunity to submit data, views, or arguments, orally or in writing. . . .

46.   Plaintiff seeks a declaration that the February and April Amendments were enacted in violation of H.R.S. § 91-3(a) and are therefore invalid. . . .

59.   Plaintiff has protected liberty and property interests, which Defendants infringed upon through the covert passage of the February and April Amendments.

60.   Neither the Plaintiff nor the public at large was made aware of the February and April Amendments and Plaintiff was denied all procedural due process before the police raided its businesses and declared Plaintiff's operations to be unlawful. . . .

65.   Had Defendants complied with H.R.S. §91-3(a), Plaintiff would have voiced its opposition to the amendments or at the bare minimum, altered its business operations to ensure legal compliance. . . .

71.   Plaintiff has been denied any mechanism for post- deprivation review.   Plaintiff's entire inventory, with a wholesale value of approximately two hundred thousand dollars was embargoed by the Defendants and then seized by the Honolulu Police Department even though everything confiscated is legal under the 2018 Farm Bill and the pre-amendment text of HAR 11-37.   Furthermore, most of what was seized is compliance with HAR 11-37 as amended, yet it was taken nonetheless. . . .

78.   The cloak-and-dagger passage of the February and April Amendments shock the conscience and interfered with Plaintiff's deeply rooted liberty and property rights, including the right to work, right to contract, and right to engage in commerce.

79.   While Plaintiff disagrees and would have opposed the February and April Amendments had notice been properly given under H.R.S.

§91-3(a), Plaintiff could have nonetheless altered his business model to conduct business in full compliance with the Amendments. . . .

81.     The actions taken by the Defendants were exceedingly deceitful. Defendants passed the Amendments without notice, and then shortly thereafter conducted two inspections of Plaintiff's establishments noting full compliance in every respect.

ECF No. 1 at 10, 14, 16–17, 20.

As stated above, *Ex parte Young* does not apply to a suit alleging a past violation nor does it apply when a plaintiff alleges that a state official violated state law. *Pennhurst*, 465 U.S. at 106 (opining that "when a plaintiff alleges that a state official has violated state law," the entire basis for the doctrine of *Ex parte Young* "disappears"); *L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992) (citation omitted) ("Declaratory relief against a state official may not be premised on a wholly past violation of federal law, because such relief would not serve the federal interest in assuring future compliance with federal law, and would be useful only as a basis for a damage award in a subsequent state proceeding."). The Eleventh Amendment thus bars Plaintiff's procedural due process claim because it neither alleges an ongoing nor federal violation.

Second, the Court concludes that even if the Eleventh Amendment did not bar Plaintiff's Second Cause of Action against Defendant Char, Plaintiff fails to sufficiently allege a procedural due process violation.  "A section 1983 claim based upon procedural due process . . . has three elements: (1) a liberty or property

20

interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." *Reynolds*, 22 F.4th at 1066 (ellipses in original) (quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)). "When protected interests are implicated, the right to some kind of prior hearing is paramount," but "the range of interests protected by procedural due process is not infinite." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569–570 (1972) (footnote omitted).

The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *see also Roth*, 408 U.S. at 569 ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."). To the extent that Plaintiff suggests that HRS § 91-3 confers any liberty or property interest, the law does not support such an argument.

As to liberty, the "'expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause' of the Fourteenth Amendment." *Carver v. Lehman*, 558 F.3d 869, 875 (9th Cir. 2009) (quoting *Olim v. Wakinekona*, 461 U.S. 238, 250–51 n.12 (1983); *see also id.* (citing *In re Cashaw*, 123 Wash.2d 138, 866 P.2d 8, 12 (1994) ("The United States Supreme

21

Court and the Ninth Circuit have clearly held that procedural laws do not create liberty interests; only substantive laws can create these interests.")).  HRS § 91-3 provides certain procedures before the adoption of any rule authorized by law.  But "[p]rocess is not an end in itself.  Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim*, 461 U.S. at 250.  Plaintiff does not offer any facts as to which specific liberty interest Defendants deprived it of here.

And property interests, "of course, are not created by the Constitution." *Roth*, 408 U.S. at 577.  "Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  *Id*.  So state law can create a property interest, but "not all state-created rights rise to the level of a constitutionally protected interest."  *Brady v. Gebbie,* 859 F.2d 1543, 1548 n.3 (9th Cir. 1988) (citation omitted)).  Here, Plaintiff fails to allege how HRS § 91-3 confers a right requiring constitutional protection.  In any case, the Court concludes HRS § 91-3 is not a source for any substantive property right.

"The categories of substance and procedure are distinct" and property "cannot be defined by the procedures provided for its deprivation any more than can life or liberty."  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541

(1985).  Plaintiff fails to allege any facts demonstrating an articulable distinction between the "substance" of Plaintiff's asserted interest — entitlement to process under HRS § 91-3 — and the "procedure" it desires in order to protect its entitlement — the process provided for under HRS § 91-3.  *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 772 (Souter, J., concurring) ("[T]he property interest recognized in our cases has always existed apart from state procedural protection before the Court has recognized a constitutional claim to protection by federal process.").

To grant relief under Plaintiff's theory of procedural due process under HRS § 91-3 would be to federalize every state law-procedure imposed by a state.  *See id.* ("[C]ollapsing the distinction between property protected and the process that protects it . . . would federalize every mandatory state-law direction.").  So if Plaintiff wishes to allege a property interest conferred upon it by state law, Plaintiff may not simply point to a state law that prescribes only procedures and no identifiable protected property interest as it does here.

Finally, even if Plaintiff had alleged a substantive right necessitating federal protection, "[i]n procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*."  *Zinerman v. Burch*, 494 U.S. 113, 125 (1990)

(emphasis in original) (citations omitted).  The Supreme Court has stated that a procedural due process claim "is not complete when the deprivation occurs." *Reed v. Goertz*, 143 S. Ct. 955, 961 (2023) (quoting *Burch*, 494 U.S. at 126).  "Rather, the claim is 'complete' only when 'the State fails to provide due process.'"  *Id*. (quoting *Burch*, 494 U.S. at 126).  "Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate."  *Burch*, 494 U.S. at 126.

Plaintiff repeatedly alleges that it has no adequate remedy at law to correct or redress the deprivation of rights by Defendants, ECF No. 1 at 16 ¶ 49; *id*. at 18 ¶ 69; *id*. at 25 ¶ 85, but it disregards the very statute it cites in its first cause of action.  HRS § 91-7(a) explicitly provides redress for Plaintiff's objection with the process in which HAR 11-37 was passed.  "Any interested person may obtain a judicial declaration as to the validity of an agency rule . . . by bringing an action against the agency in the circuit court of the county in which the petitioner resides or has its principal place of business."  HRS § 91-7(a).  The action may be maintained whether or not the petitioner has requested the agency pass upon the validity of the rule in question.  *Id*.

Hawai'i courts are also empowered under HRS § 91-7(b) to invalidate any rule they find "violates constitutional or statutory provisions, or exceeds the statutory authority of the agency, or was adopted without compliance with

statutory rulemaking procedures." Yet, Plaintiff fails to allege how such procedures do not constitute constitutionally adequate procedural rights. As such, it does not sufficiently allege a procedural due process violation.

Thus, the Court DISMISSES Plaintiff's procedural due process claim (Second Cause of Action). The Court GRANTS LEAVE TO AMEND this claim despite its skepticism that it can be rehabilitated.

### b. Plaintiff's § 1983 Substantive Due Process Claim (Third Cause of Action)

Like Plaintiff's procedural due process claim, Plaintiff fails to allege an ongoing violation of federal law in its substantive due process claim. And it appears that Plaintiff's substantive due process claim is rooted in Defendants' alleged past violation of state law, i.e. their passing of the amendments to HAR 11-37 in violation of HRS § 91-3, which in turn is an alleged violation of its due process rights. As explained in the Court's analysis of Plaintiff's procedural due process claim, *Ex parte Young* does not apply when a plaintiff alleges that a state official has violated state law.

Plaintiff attempts to establish a federal violation by offering the conclusory statement that the amendments violate the substantive component of the Due Process Clause. *Id*. at 21 ¶ 82. But even if this were true, the passage of the amendments is a past violation, not an ongoing violation. *Ex parte Young* "does not permit judgments against state officers declaring that they violated federal law

25

in the past." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506

U.S. 139, 146 (1993) (citing *Green v. Mansour*, 474 U.S. 64, 73 (1985)).  Indeed,

*Ex parte Young* "has been focused on cases in which a violation of federal law by a

state official is ongoing as opposed to cases in which federal law has been violated

at one time or over a period of time in the past, as well as on cases in which the

relief against the state official directly ends the violation of federal law[.]"

*Papasan*, 478 U.S. at 277–78.  Plaintiff does not offer any facts implicating an

ongoing violation of federal law, and so *Ex parte Young* cannot apply.

 In addition, similar to its procedural due process claim, even if the Eleventh

Amendment did not bar Plaintiff's substantive due process claim, Plaintiff fails to

adequately plead a substantive due process claim.

 There are two kinds of § 1983 claims that may be brought against a state

actor under the substantive component of the Due Process Clause of the Fourteenth

Amendment.  First, because the Due Process Clause specially protects certain

"fundamental rights and liberties," *Washington v. Glucksberg*, 521 U.S. 702, 720

(1997), "a plaintiff may bring suit under § 1983 for state officials' violation" of

such rights and liberties, *Burch*, 494 U.S. at 125, so long as the substantive due

process claim provides "a 'careful description' of the asserted fundamental liberty

interest," *Glucksberg*, 521 U.S. at 703 (quoting *Reno v. Flores*, 507 U.S. 292, 302

(1993)).  *See also Reynolds*, 22 F.4th at 1079 ("[P]roperty interests are protected

by procedural due process even though the interest is derived from state law rather than the Constitution, [but] substantive due process rights are created only by the Constitution." (brackets in original) (quoting *Regents of Univ. of Mich. V. Ewing*, 474 U.S. 214, 229 (1985) (Powell, J., concurring) (citing *Roth*, 408 U.S. at 577 (1972))).  Second, the Due Process Clause also bars certain arbitrary, wrongful government actions "regardless of the fairness of the procedures used to implement them."  *Burch*, 494 U.S. at 125 (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).

Plaintiff offers only that it has a right to work, right to contract, and right to engage in commerce.  ECF No. 1 at 20 ¶ 78.  Plaintiff's general descriptions are simply not enough to sustain "the careful description" requirement.  *See Glucksberg*, 521 U.S. at 722 ("[E]stablishing a threshold requirement—that a challenged state action implicate a fundamental right—before requiring more than a reasonable relation to a legitimate state interest to justify the action . . . avoids the need for complex balancing of competing interests in every [substantive due process] case.").

Plaintiff's due process claim also fails to sufficiently describe constitutionally "arbitrary, wrongful government action."  *Burch*, 494 U.S. at 125 Substantive due process prevents two types of government action: "conduct that 'shocks the conscience,' or interferes with rights 'implicit in the concept of ordered

liberty,'" *United States v. Salerno*, 481 U.S. 739, 746 (1987) (quoting *Rochin v. California*, 342 U.S. 165, 172 (1952), *Palko v. Connecticut*, 302 U.S. 319, 325–326 (1937), respectively). The arbitrary actions Plaintiff alleges are Defendants' failure to comply with HRS § 91-3 in passing the amendments and their subsequent raid of its business pursuant to the amendments. Plaintiff alleges these actions caused "Plaintiff to lose (a) all eight of its business locations, (b) nearly two hundred thousand dollars' worth of wholesale inventory, (c) hundreds of thousands of dollars in lost revenue, and (d) face both criminal and civil liability." ECF No. 1 at 20 ¶ 80. But Plaintiff does not have a cause of action against a state official simply because the state official caused it some harm. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998) ("[T]he due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm.").

Here, Plaintiff offers only threadbare recitals of the elements of a substantive due process violation supported by mere conclusory statements that Defendant Char's actions constitute such violation. It does not explain how Defendants' conduct, "in the constitutional sense," shocks the conscience or interferes with rights implicit in the concept of liberty. *See Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 128 (1992) ("We also are not persuaded that the city's alleged failure to train its employees, or to warn them about known risks of harm, was an

28

omission that can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.").  And so Plaintiff fails to sufficiently plead a substantive due process claim.

The Court concludes that *Ex parte Young* does not apply to Plaintiff's substantive due process claim, but even if it did, Plaintiff fails to state a substantive due process claim.  Therefore, the Court DISMISSES the substantive due process claim but GRANTS LEAVE TO AMEND, although the Court is skeptical that amendment can save this claim.

In crafting an amended complaint, the Court encourages Plaintiff to be mindful of the Eleventh Amendment and traditional principles of equity, comity, and federalism.  *Cf Green*, 474 U.S. at 72 ("We held . . . that a declaratory judgment declaring a state criminal statute unconstitutional was unavailable *where it would have much the same effect as an injunction prohibiting enforcement of the statute*, and the latter was barred by traditional principles of equity, comity, and federalism." (emphasis added) (citing *Samuels v. Mackell*, 401 U.S. 66, 69–73 (1971)).  "It is in the public interest that federal courts of equity should exercise their discretionary power to grant or withhold relief so as to avoid needless obstruction of the domestic policy of the states."  *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 298 (1943).

### 3.   Plaintiff's § 1983 Equal Protection Claim

"The Equal Protection Clause of the Fourteenth Amendment provides that no State shall 'deny to any person within its jurisdiction the equal protection of the laws.'"  *Miller v. Johnson*, 515 U.S. 900, 904 (1995) (quoting U.S. Const., amend. 14, § 1).   An equal protection claim can come in two forms: one challenging "governmental classifications that 'affect some groups of citizens differently than others,'" or a class-of-one cause of action where a plaintiff "claims that she has been irrationally singled out."  *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008) (quoting *McGowan v. Maryland*, 366 U.S. 420, 425 (1961)).

Plaintiff's equal protection claim consists of a paragraph providing the text of § 1983, the text of the Equal Protection Clause, and a sole allegation about how Defendants singled out its businesses.  *See* ECF No. 1 at 21 ¶ 91 ("February and April Amendments deprived Plaintiff of the equal protection of the law because the Plaintiff was the sole business raided by the Defendants even though hundreds of similarly situated businesses selling and advertising identical products operate on a daily basis across the State of Hawaii.").  But Plaintiff then requests a declaration that *the February and April Amendments* violate the Equal Protection Clause and a preliminary injunction prohibiting Defendants from enforcing the amendments "since they violate Plaintiff's rights to equal protection under both Federal and

State laws." *Id*. ¶ 92.  Plaintiff's equal protection theory is a moving target, making it difficult to discern whether Eleventh Amendment immunity applies.

In any event, the allegations are insufficient to establish an equal protection claim.  It is unclear how the amendments denied Plaintiff equal protection of the laws because Plaintiff fails to provide any facts demonstrating that the actual amendments to HAR 11-37, not Defendant Char's enforcement of the amendments, violate the Equal Protection Clause.  And to the extent Plaintiff is alleging that Defendant Char violated the Equal Protection Clause by investigated and raiding only "Plaintiff's business locations even though delta-8 and delta-10 are ubiquitous throughout Hawaii and advertised openly," *Id*. at 23 ¶ 97, it offers no allegation that such action was intentionally or purposefully discriminatory or that there was no rational basis for the difference in treatment.  *See Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) ("To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." (quoting *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998))); *Vill. of Willowbrook v. Olech*, 528 U.S. 562 (2000) ("Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly

situated and that there is no rational basis for the difference in treatment.")
(citations omitted).

Also puzzling is Plaintiff's request for an injunction prohibiting Defendants
from enforcing the amendments "since they violate Plaintiff's rights to equal
protection under both Federal and State laws."  ECF No. 1 at 23 ¶ 93.  Without any
facts to discern whether the amendments themselves violate the Equal Protection
Clause, it is unclear how the requested injunction would remedy such violation.  If,
however, Defendant Char is enforcing the amendments in a manner that deprives
Plaintiff of equal protection of the laws, proper prospective relief would be to
enjoin the offending action, not to invalidate an entire state regulation.  It is
difficult to imagine a situation in which it would be proper for a federal court to
enjoin a state official from enforcing a valid state law simply because he or she
applied the law improperly with respect to one party.

But even if Plaintiff is alleging that the manner in which Defendant Char
chose to raid its businesses violates its constitutional rights, it is unclear what the
*ongoing* federal violation is here.  Plaintiff alleges that it has "suffered and
continues to suffer irreparable harm from the conduct of Defendants and is under
threat of losing its lease agreements and its businesses in the absence of an
injunction, and faces the very real threat of both criminal and civil liability."  ECF
No. 1 at 23 ¶ 94.  But this is an allegation of ongoing harm to Plaintiff, not an

official's ongoing violation of federal law.  Unless Defendant Char has continuously raided its business and only its business since the original June 24, 2022 raid, Plaintiff is still alleging only a *past* federal violation, so *Ex parte Young* would not apply.

The Court thus concludes that Plaintiff fails to allege an equal protection claim.  But even if it did properly allege an equal protection claim, on the facts Plaintiff has provided, the claim is barred by the Eleventh Amendment.  It is, however, unclear that any amendment would be futile.  And so the Court DISMISSES the equal protection claim WITH LEAVE TO AMEND.

### 4.   Plaintiff's Preemption Claim

Plaintiff alleges that the amendments are preempted by the 2018 Farm Act under the Supremacy Clause based on the theory of conflict preemption.  Plaintiff contends that Defendant Char violated the 2018 Farm Act when she amended HAR 11-37 to exclude from the definition of "hemp," the cannabinoids Delta-8-THC and Delta-10-THC.  ECF No. 24 at 32 ¶ 100–103.  The law of the case prevents Plaintiff from pursuing this claim.

The law of the case doctrine generally precludes a court "from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993) (citation omitted) (cert. denied 508 U.S. 951 (1993).  "The doctrine is not a limitation on a

tribunal's power, but rather a guide to discretion." *United States v. Alexander*, 106

F.3d 874, 876 (9th Cir. 1997) (citing *Arizona v. California*, 460 U.S. 605, 618

(1983)).

The TRO Order explained that Plaintiff's Supremacy Clause claim was

premised on the theories of conflict preemption and express preemption. *See*

*Duke's*, 2022 WL 17128976, at *5–6 (citation omitted).  The TRO Order

determined that conflict preemption did not apply in this case because the "2018

Farm Act explicitly provides that it does not preempt states from creating laws"

that regulate the production of hemp more stringently.  *Id.* at *5 (citing 7 U.S.C. §

1639(p)(3)(A)).  It further explained that the 2018 Farm Act "says nothing about

whether a state may prohibit possession or sale of industrial hemp."  *Id*. (citing

*C.Y. Wholesale, Inc. v. Holcomb*, 965 F.3d 541, 546 (7th Cir. 2020)).  The TRO

Order thus concluded that the "plain language of the 2018 Farm Act does not

preclude the DOH from further regulating certain derivatives of hemp," such as

Delta-8-THC and Delta-10-THC.  *Id*. at *6 (citing HAR § 11-37-3(h)(12)).

Next, the TRO Order discussed how the "2018 Farm Act's express

preemption clause provides that '[n]o State . . . shall prohibit the transportation or

shipment of hemp or hemp products produced in accordance with subtitle G of the

Agricultural Marketing Act of 1946 . . . through the State[.]'"  *Id*. (ellipses in

original) (quoting Pub. L. No. 115-334, § 10114(b), 132 Stat. at 4914 (codified at 7

34

U.S.C. § 1639o note)).  The TRO Order concluded, however, that there is "nothing in the 2018 Farm [Act] that supports the inference that Congress was demanding that states legalize industrial hemp, apart from the specific provisions of the express preemption clause."  *Id*. (brackets in original) (quoting *C.Y. Wholesale I*, 965 F.3d at 548).  Judge Kobayashi thus decided that the "2018 Farm Act does not require the State of Hawai'i to allow Plaintiff to sell and/or distribute its hemp products;" therefore, that portion of HAR 11-37 that prevents Plaintiff from selling or distributing hemp products containing Delta-8-THC or Delta-10-THC once those products arrive in Hawai'i, "does not conflict with the 2018 Farm Act's express preemption clause."  *Id*. at *8.  This is the law of the case.

A court may have discretion to depart from the law of the case where (1) "the first decision was clearly erroneous," (2) "an intervening change in the law has occurred," (3) "the evidence on remand is substantially different," (4) "other changed circumstances exist," or (5) "a manifest injustice would otherwise result." *Alexander*, 106 F.3d at 876 (citing *Thomas*, 983 F.2d at 155).  None of the foregoing apply here.  The Court declines to exercise its discretion to depart from the law of the case.  *See id*. ("Failure to apply the doctrine of the law of the case absent one of the requisite conditions constitutes an abuse of discretion." (citing *Thomas*, 983 F.2d at 155)).  The 2018 Farm Act does not preempt HAR 11-37 under the Supremacy Clause.  No amendment could save Plaintiff's Supremacy

Clause claim against Defendant Char.  The Court DISMISSES Plaintiff's Fifth

Cause of Action WITH PREJUDICE.

### 5.  Plaintiff's Takings Claim

Plaintiff's Sixth Cause of Action asserts a violation of the Takings Clause of

the Fifth Amendment.  *See* ECF No. 1 at 26–28.  Plaintiff alleges in its Complaint

that the amendments "deprived Plaintiff of all economically beneficial use of its

business and lease without just compensation."  *Id*. at 26 ¶ 112.  Plaintiff thus

argues that it is "entitled to just compensation in the form of loss income from the

use of its property."  *Id*. ¶ 114.  In other words, Plaintiff wants money.

The Eleventh Amendment bars Plaintiff's takings claim.  First, the law on

this matter is well settled.  As explained above, "when a plaintiff sues a state

official alleging a violation of federal law, the federal court may award an

injunction that governs the official's future conduct, but not one that awards

retroactive monetary relief."  *Pennhurst*, 465 U.S. at 102–03 (citing *Edelman*, 415

U.S. at 666–667).  Plaintiff's takings claim neither alleges an ongoing federal

violation nor does it request proper relief against Defendant Char under *Ex parte*

*Young*.

Similar to Plaintiff's § 1983 claims, Plaintiff's takings claim is based on a

state law violation.  Plaintiff alleges that since the violative state law amendments

were passed, Plaintiff has been "threatened with eviction from each of its retail

36

locations for using the premises in violation of the permitted use since the sale of delta-8 and delta-10 products is now illegal." ECF No. 1 at 28 ¶ 118. Plaintiff further alleges that it "lacks inventory to conduct business since its inventory, including hemp goods still considered legal under HAR 11-37, as amended, were embargoed, and then seized." *Id*. Plaintiff thus argues that the "diminution of value of Plaintiff's business and government interference caused by the February and April Amendments qualify as an unconstitutional taking without just compensation." *Id*. Again, Plaintiff alleges an ongoing harm, not an ongoing federal violation.

And Plaintiff does not request injunctive relief; Plaintiff seeks "just compensation in the form of lost income from the use of its property." ECF No. 1 at 26 ¶ 114. Also, although Plaintiff sues both DOH and Defendant Char for violation of the Takings Clause, the Court finds that Plaintiff's takings claim is actually against the State, not Defendant Char.

"Where relief is sought under general law from wrongful acts of state officials, the sovereign's immunity under the Eleventh Amendment does not extend to wrongful individual action, and the citizen is allowed a remedy against the wrongdoer personally." *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 462 (1945) *overruled on other grounds* by *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 614 (2002) (concluding that a state waives its immunity

when it voluntarily removes a case to federal court and overruling *Ford* to the extent that it conflicts with such conclusion).  In contrast, when an action "is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants."  *Id*. at 464; *see also Smith v. Reeves*, 178 U.S. 436, 438–39 (1900) (holding that when relief sought is a judgment against an officer in his/her official capacity, and such judgment "would compel him to pay out of the public funds in the treasury of the state a certain sum of money," such a judgment "would have the same effect as if it were rendered directly against the state for the amount specified in the complaint.").  Such a suit is clearly distinguishable from an action against a state official in his/her personal capacity to recover a personal judgment for money wrongfully collected under color of state law.  *Great N. Life Ins. Co. v. Read*, 322 U.S. 47, 50 (1944) (collecting cases).

Plaintiff's opposition argues that in certain cases, the Eleventh Amendment does not bar a suit to recover property in a state's possession, or funds held by the state arising from the sale of seized property.  ECF No. 27 at 24.  This may be true, but the Complaint here patently asks for damages, not for recovery of property in the State's possession.  Neither cases cited by Plaintiff, *Taylor v. Westly*, 402 F.3d 924 (9th Cir. 2005) nor *Suever v. Connell*, 439 F.3d 1142 (9th Cir. 2006), involved

a suit for damages.  *See* ECF No. 27 at 25–26.  The plaintiffs in *Taylor* requested return of their own property.  *Taylor*, 402 F.3d at 933.  *Suever* involved the same — the return of property based on a state official's alleged unconstitutional act. *See Suever*, 439 F.3d at 1147–78.  Both courts were explicit that the Eleventh Amendment did not bar the plaintiffs' claim because the relief requested was the return of property based on an alleged unconstitutional act.  *See id.* at 1148 (explaining that unlike a complaint that requests prospective relief to remedy ongoing constitutional notice requirements, "other types of requested relief are clearly barred by the Eleventh Amendment, for example, where the relief is premised solely on the State's compliance with state law"); *Taylor*, 402 F.3d at 936 (holding that plaintiffs claim was not a takings claim because it was "merely a suit for the return of their property" held in trust for the plaintiffs and, had "any money permanently escheated to the state, and therefore no longer held in trust for the plaintiffs," the court would be presented with the sovereign immunity question in the context of a takings claim).

Here, Plaintiff does not seek return of improperly taken property based on an official acting beyond his/her statutory scope.  And it may be that the State no longer has Plaintiff's inventory in any event.  *See* ECF No. 1 at 21 ¶ 81 ("Defendants claimed that they no longer had possession of the inventory and that it had been turned over to the Honolulu Police Department.").  Plaintiff explicitly

asks the Court for "just compensation in the form of lost income from use of its property."  ECF No. 1 at 26 ¶ 114.  From a "remedial perspective, 'just compensation' is on all fours with traditional monetary damages, which are the quintessential form of retrospective relief." *Seven Up Pete Venture*, 523 F.3d at 956.  And so *Ex parte Young* does not apply to Plaintiff's taking's claim.  The claim is barred by the Eleventh Amendment.

Although the Court is unconvinced that Plaintiff may properly bring a takings claim here, the Court cannot be certain that there are no additional facts that could save Plaintiff's claim.  The Court thus DISMISSES Plaintiff's sixth cause of action WITH LEAVE TO AMEND.

## C.    Motion for Preliminary Injunction

At the time the December 1, 2022 Minute Order was issued, Defendants had not had an opportunity to file their opposition to Plaintiff's Motion for PI. Defendants filed their opposition to the Motion for PI on January 27, 2023. Curiously, Defendants neither discussed nor raised sovereign immunity in their opposition to the Motion for PI.  *See* ECF No. 39.  Defendants had, however, filed their Motion to Dismiss on October 18, 2022, squarely raising sovereign immunity as a defense to suit.

In any event, "Eleventh Amendment sovereign immunity limits the jurisdiction of the federal courts and can be raised by a party at any time during

judicial proceedings or by the court sua sponte." *Cal. Franchise Tax Bd. v. Jackson*, 184 F.3d 1046, 1048 (9th Cir. 1999).  As explained above, sovereign immunity bars Plaintiff's claims for injunctive relief against DOH and Defendant Char.  *See Cardenas v. Anzai*, 311 F.3d 929, 934 (9th Cir. 2002) ("[W]e may not bypass the issue [of sovereign immunity] in favor of deciding the case on the merits." (citing *Jackson*, 184 F.3d at 1048)).  The State is immune from all of Plaintiff's claims and Defendant Char is also immune because the *Ex parte Young* exception does not apply to Plaintiff's claims against her.  The Court thus DENIES Plaintiff's Motion for Preliminary Injunction.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss, ECF No. 17, as follows:

1.     The Court DISMISSES all claims against DOH WITH PREJUDICE.

2.     The Court DISMISSES Plaintiff's First and Fifth Causes of Action (respectively, violation of HRS § 91-3 and preemption claims) WITH PREJUDICE.

3.     The Court DISMISSES Plaintiff's Second, Third, Fourth, and Sixth Causes of Action (respectively, its procedural and substantive due process claims, equal protection claim, and takings claim) WITH LEAVE TO AMEND.

Any amended complaint must be rendered in accordance with the Court's instructions in this Order no later than May 22, 2023.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, April 28, 2023.



_____

Jill A. Otake
United States District Judge

CIVIL NO. 22-00385 JAO-RT; *Duke's Investments LLC v. DOH & Dr. Char*; Order Granting Defendants' Motion to Dismiss and Denying Plaintiff's Motion for Preliminary Injunction.